# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**FINAL EXPENSE DIRECT**,

    Plaintiff,

v.                                    Case No. 8:23-cv-2093-WFJ-AAS

**PYTHON LEADS, LLC**, **JACQUELYN
LEAH LEVIN**, **DAVID LEVIN**, and
**ALI RAZA**,

    Defendants.

_____/

## <u>ORDER</u>

Before the Court is Plaintiff Final Expense Direct's ("Final Expense") Partial Motion for Summary Judgment. Dkt. 165. Defendants Python Leads, LLC ("Python"), Jacquelyn Leah Levin ("Ms. Levin"), and David Levin ("Mr. Levin") (collectively, the "Python Defendants") have filed a response in opposition, Dkts. 187, 188, and Plaintiff has replied. Dkt. 191. Defendant Ali Raza ("Defendant Raza") has also responded, Dkts. 200, 201, and Plaintiff has replied. Dkt. 203.[1] After

---

[1] In its Motion for Summary Judgment, Plaintiff asserts that it is "entitled to summary judgment on its fraudulent misrepresentation claims against Python, Ms. Levin, Mr. Levin, and Defendant Raza." Dkt. 165 at 24–25. This reference to "fraudulent misrepresentation" would appear to concern both Count IX against the Python Defendants, as well as Count XII against Defendant Raza, which is the only claim against him. Dkt. 203 at 2 ("[T]he only count against Defendant Raza at present is Fraudulent Misrepresentation."). However, in Plaintiff's Reply to Defendant Raza's Response to the Motion for Summary Judgment, Plaintiff states that it "has not sought summary judgment against Defendant Ali Raza," and therefore "the defense of this Motion does not belong to Defendant Raza." *Id.* at 1, 2. Because the Plaintiff's Motion for Summary Judgment seemingly references Count XII, but Plaintiff later clearly argues contrary to this in its Reply to Defendant Raza, the Court construes Plaintiff as having abandoned any portion of its motion that sought summary judgment as to Count XII against Defendant Raza.

careful consideration of the applicable law, the submissions of the parties, and the entire file, the Court grants-in-part and denies-in-part Plaintiff's motion.

## BACKGROUND

This case arises out of certain business dealings between Plaintiff Final Expense, a company that sells life insurance policies, and Python, a lead generation company.[2] Dkt. 70 at 3. The relevant parties are Kim Wilhelm, the owner of Final Expense, Dkt. 165 at 5; Luis Beauchamp, the Vice-President of Marketing for Final Expense, *id.* at 4; Ms. Levin, the owner and sole member of Python, Dkt. 72 at 25; Mr. Levin, who has represented himself as the Compliance Manager for Python, Dkt. 70-17 at 7; and Defendant Raza, who has represented himself as both the Head of Client Acquisitions and Co-Founder of Python, Dkt. 70-22 at 2; Dkt. 165-3 at 365.

### I.    Factual History

The relationship between Plaintiff and Python began sometime in early 2021; at least by February 26, 2021, when Defendant Raza emailed Mr. Beauchamp on behalf of Python to solicit business, wherein he referred to himself as the Co-Founder of Python. Dkt. 165-3 at 365. On March 12, 2021, Defendant Raza sent a

---

[2] As a lead generation company, Python utilized call centers to broadly solicit business from potential customers. *See* Dkt. 165-4 at 11:3–12:18. Once an individual would stay on the phone for a certain amount of time, Python then referred them to one of their customers—such as Final Express—as a "lead" for them to further pursue. *See* Dkt. 70-1 at 2. The Court notes that Python Leads, LLC is located in the United States and is owned solely by Jacquelyn Levin, while one of the call centers utilized was a Pakistani company named "Python Leads Private Limited," which is owned solely by Ali Raza. *See* Dkt. 165-4 at 269–70; *see also* Dkt. 165-3 at 9:21–10:18.

contract to Mr. Beauchamp for lead generation services (the "March 2021 Agreement"), Dkt. 165-7 at 12, and this was returned to Defendant Raza, signed by Kim Wilhelm for Final Expense on March 15, 2021. *Id.* at 11. The agreement remained unsigned by Python. *See* Dkt. 165-1 ¶ 27; Dkt. 70-1.

Included in the March 2021 Agreement was an indemnity clause that reads as follows: "[Party A] will hold Party B the harmless form [sic] and against any and all claims, costs, actions, losses, expenses, liabilities, and damages ('Claims') arising from the Undersigned's breach of the Agreement or this Addendum or failure to ensure that the Leads provided to your company comply with the terms of the [Telephone Consumer Privacy Act ("TCPA")]." Dkt. 70-1 at 3. The Court construes Party A to refer to Python and Party B to refer to Final Expense.[3] Also included was a payment schedule, requiring payments for Python's lead generation services in the amounts of $55, $65, and $75 per lead for the first, second, and third weeks of services, respectively. *See* Dkt. 70-1. After Final Expense's signing of the March 2021 Agreement, Python began generating leads, and Final Expense paid invoices per the rates listed. *See* Dkt. 165-7 at 352–53, 354–55, 356–57 (invoices from March

---

[3] On the first page of the two-page March 2021 Agreement, it lists "Party A" as Jacquelyn Leah Levine for Python Leads LLC, and it lists "Party B" as Kim Wilhelm for Final Expense Direct. Dkt. 70-1 at 2. Whereas on the signature block of the second page of the March 2021 Agreement, it lists "Party A" as Kim Wilhelm, and it lists "Party B" as Jacquelyn Leah Levine. *Id.* at 3. The Court finds this to be a mere typographical error, and declines to find that this creates a genuine issue that could lead a reasonable jury to find that "Party A" referred to Final Expense. The initial listing of parties establishes Party A as Python and Party B as Final Expense; this is congruent with the rest of the agreement, which refers to Party A as the provider of services and Party B as the payor for services rendered. *See generally id.* Only in the signature block are the references reversed.

29, 2021, at a rate of $55; April 7, 2021, at a rate of $65; and April 15, 2021, at a rate of $75); Dkt. 165-5 at 11:21–22 ("A week after we signed the agreement, they started sending leads. We paid the invoices[.]").

In June 2021, Python proposed a new arrangement (the "June 2021 Agreement"), which Ms. Levin signed on behalf of Python but was not signed by Final Expense. Dkt. 70-15. Included in the June 2021 Agreement was a modified indemnity clause that held that it would have been Final Expense's "responsibility to protect [itself] against any cost, demands or damages in regards to TCPA Rules. Python Leads [would] not be responsible for any loss or damages in regards to TCPA." *Id.* Also included was a modified payment schedule, requiring payments for Python's lead generation services at the rate of $20 per lead, billed weekly. *Id.* There is no evidence in the record that shows that this rate was ever utilized. *See, e.g.*, 165-3 at 398 (referencing rates of $30 and $27 per lead, but not $20).

Thereafter, Plaintiff began receiving numerous TCPA violation complaints from individuals on the Do Not Call ("DNC") Registry who were contacted by Python on behalf of Final Expense. Final Expense ultimately resolved some of the complaints itself through settlement agreements. The following details the settlements relevant to the instant motion. First, Wes Newman notified Plaintiff that he received multiple unsolicited communications from Python on behalf of Final Expense while he was on the DNC Registry. Dkt. 165-6 ¶ 16; Dkt. 165-7 at 358–60.

Final Expense settled Mr. Newman's TCPA claims for $1,500. Dkt. 165-6 ¶ 16; Dkt. 165-7 at 97–100, 307–08. Then, Robert Doane notified Plaintiff that he received multiple unsolicited communications from Python on behalf of Final Expense while he was on the DNC Registry. Dkt. 165-6 ¶ 17; Dkt. 165-7 at 20–41. Final Expense settled Mr. Doane's TCPA claims for $18,500. Dkt. 165-6 ¶ 17; Dkt. 165-7 at 89–96, 301–03. Lastly, TCPA attorney Andrew Heidapour notified Plaintiff that two of his clients, Joe Ferguson and Thomas Matthews, had received unsolicited communications from Python while they were on the DNC Registry and that they intended to file a class action lawsuit against Final Expense. Dkt. 165-6 ¶¶ 18–19; Dkt. 165-7 at 315–16. Final Expense settled these TCPA claims for $100,000. Dkt. 165-6 ¶ 19; Dkt. 165-7 at 47–54, 304–06.

Plaintiff now seeks indemnification for these settlement amounts and the related attorney's fees, among other remedies. *See generally* Dkt. 70.

## II.    Procedural History

On September 15, 2023, Plaintiff filed the Complaint in the instant action, Dkt. 1, followed by an Amended Complaint, Dkt. 25, and the operative Second Amended Complaint, Dkt. 70, which alleges the following claims: breach of contract against Python (Count I); or alternatively to Count I, breach of contract against Ms. Levin (Count II); or alternatively to Counts I and II, breach of implied-in-fact contract against Defendants Python and Ms. Levin (Count III); or alternatively to

Counts I, II, and III, promissory estoppel against Defendants Python and Ms. Levin (Count IV); quantum meruit against Python, or alternatively Ms. Levin (Count V); violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against Defendants Python, Ms. Levin, and Mr. Levin (Count VI); fraud in the inducement against Defendants Python, Ms. Levin, and Mr. Levin (Count VII); negligent supervision against Python, or alternatively Ms. Levin (Count VIII); fraudulent misrepresentation against Defendants Python, Ms. Levin, and Mr. Levin (Count IX); or alternatively to Count IX, negligent misrepresentation against Defendants Python, Ms. Levin, and Mr. Levin (Count X); civil conspiracy against Defendants Python, Ms. Levin, and Mr. Levin (Count XI); and alternatively to Count IX, fraudulent misrepresentation against Defendant Raza (Count XII). *Id.*

Plaintiff now moves for summary judgment as to the following: breach of contract (Counts I, II, and III), promissory estoppel (Count IV), negligent supervision (Count VIII), fraudulent misrepresentation (Count IX), negligent misrepresentation (Count X), and civil conspiracy (Count XI). *See* Dkt. 165.

## LEGAL STANDARD

Summary judgment is only appropriate when there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the

governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Courts, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e), (c). The court may not weigh evidence to resolve a factual dispute; if a genuine issue of material fact is present, the court must deny summary judgment. *Hutcherson v. Progressive Corp.*, 984 F.2d 1152, 1155 (11th Cir. 1993). Likewise, the court should deny summary judgment if reasonable minds could differ on the inferences arising from undisputed facts. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

## DISCUSSION

## I.    Count I: Breach of Contract Against Python

Plaintiff seeks summary judgment as to the breach of contract claim against Python. Dkt. 165 at 3–8. "For a breach of contract claim, Florida law requires the plaintiff to . . . establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citation omitted).

### a. *Existence of a Contract*

Traditionally, to establish the formation of a binding contract under Florida law, "courts do not consider the subjective intentions of the parties but instead look for mutuality of assent. Assent must be outwardly and objectively manifested and is usually evidenced by an offer and acceptance." *HTC Leleu Family Tr. v. Piper Aircraft, Inc.*, 571 F. App'x 772, 776 (11th Cir. 2014) (citing *Gira v. Wolfe*, 115 So. 3d 414, 417 (Fla. 2d DCA 2013)). "An unsigned contract may be binding and enforceable where the parties perform under the contract, because assent may be shown by the parties' conduct." *United Rentals, Inc. v. Kimmins Contr. Corp.*, No. 8:08-cv-835-T-33TBM, 2009 WL 4885028, at *4 (M.D. Fla. Dec. 14, 2009) (quoting *Siegel v. Newagecities.com, Inc.*, 920 So. 2d 1274, 1276 (Fla. 4th DCA 2006)). A signature is used to demonstrate mutual assent, "but these facts may be shown in other ways, for example, by the acts or conduct of the parties." *Muckle v.*

*Healthcare Support Staffing, Inc.*, No. 6:15-cv-1391-Orl-28TBS, 2016 WL 3003217, at *1 (M.D. Fla. May 23, 2016) (citation modified); *see Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co.*, 147 F. App'x 841, 845 (11th Cir. 2005) ("The absence of a party's signature is not the death knell of a binding contract or amendment.").

Here, it is undisputed that the March 2021 Agreement was signed by Kim Wilhelm on behalf of Plaintiff but remained unsigned by Python. *See* Dkt. 165-1 ¶ 27; Dkt. 70-1. The Python Defendants argue that this agreement cannot be binding upon Python both because it went unsigned and because Defendant Raza "did not possess authority to unilaterally bind Python to contractual obligations."[4] Dkt. 187 at 2–3. However, Plaintiff contends that Python manifested assent to the agreement by performing and receiving a benefit under the contract. Dkt. 165 at 5.

After the March 2021 Agreement was disseminated, it was established that Python sent invoices to Plaintiff for leads it had generated and that Plaintiff paid these invoices, as outlined in the agreement. *See* Dkt. 70-1 ("[A]ccording to the agreement [Plaintiff] is agreeing in paying the price of $55/per Live Transfer Lead first week! And from 2nd week it will $65 Per Live Transfer[.] 3rd Week it will be $75 Per Lvie [sic] Transfer. However, both parties have AUTHORITY to rewise

---

[4] The Python Defendants also argue that Plaintiff itself objected to the March 2021 Agreement and that the agreement included incorrect information regarding an address for Python, although no citations are provided. Dkt. 187 at 3. The Court finds that neither of these arguments, as presented, are sufficient to establish a genuine issue as to any material fact regarding the binding nature of the March 2021 Agreement.

[sic] the price with prior notice and agreed upon by both Parties."); Dkt. 165-7 at 352–53, 354 –55, 356–57 (invoices from March 29, 2021, at a rate of $55; April 7, 2021, at a rate of $65; and April 15, 2021, at a rate of $75); Dkt. 165-5 at 11:17–23 ("We signed an agreement to purchase leads from Python. . . . They sent over the agreement, which I signed. . . . A week after we signed the agreement, they started sending leads. We paid the invoices[.]"). Notwithstanding the issue of Defendant Raza's binding authority, the Court finds there is no genuine dispute that Plaintiff's signature and Python's performance and receipt of payments are sufficient to establish mutual assent. *See Integrated Health Servs. of Green Briar v. Lopez-Silvero*, 827 So. 2d 338, 339 (Fla. 3d DCA 2002) (holding that an unsigned contract was binding, as both parties "acted as if they had a valid contract" through their performance); *Fonseca v. Taverna Imps., Inc.*, 212 So. 3d 431, 441 (Fla. 3d DCA 2017) (finding that an unsigned contract was binding, as mutual assent was established through performance, including payment).

However, the Python Defendants claim that, even if the March 2021 Agreement was found to be binding, it was amended by the June 2021 Agreement. Dkt. 187 at 3. It is undisputed that the June 2021 Agreement was signed by Ms. Levin for Python but remained unsigned by Plaintiff. *See* Dkt. 70-15. Unlike the March 2021 Agreement, no evidence is provided to evince mutual assent as to the June 2021 Agreement. *See* Dkt. 187 at 3. Whereas Plaintiff established that Python

began performance and received payments immediately following Plaintiff's signing of the March 2021 Agreement, the Python Defendants fail to show any conduct by Plaintiff following Python's signing of the June 2021 Agreement that could manifest assent.

Therefore, the Court finds that there are no genuine issues as to any material fact regarding the binding nature of the unamended March 2021 Agreement, including the relevant indemnification clause.[5] The Python Defendants have failed to raise a genuine issue supported by the record as to any amendment to this binding agreement.

### b.  Material Breach

Although the indemnification clause does not require that Plaintiff notify Python of claims against it or provide Python the opportunity to defend against the claims, *see* Dkt. 70-1 at 3, the Eleventh Circuit has held that it would "offend due process if an indemnitee's unilateral acts could bind the indemnitor without notice and an opportunity to be heard."[6] *GAB Bus. Servs., Inc.*, 809 F.2d at 760 (citation

---

[5] Furthermore, Python consistently represented that it bore the responsibility of ensuring TCPA compliance and handling all claims. *See, e.g.*, Dkt. 70-1 at 2 (emphasis added) (Ms. Levin stating in email that "[Python] will *always* take responsibility in protecting [Final Expense] against these professional scammers"); Dkt. 70-12 at 2 (Ms. Levin stating in email that "[Python] will contact him and get this resolved for you" after Plaintiff contacted Ms. Levin concerning another complainant represented by an attorney); Dkt. 70-10 at 2 (Defendant Raza explaining in email that "[Python is] scrubbing out data against TCPA and DNC litigator list . . . [Final Expense is] completely harmless").

[6] Plaintiff cites to *Crystal River Enters., Inc. v. Nasi, Inc.* to establish that it was not required to provide Python notice or the opportunity to defend. 399 So. 2d 77, 78 (Fla. 5th DCA 1981) ("[I]n the absence of a specific provision in the indemnity agreement, there is no requirement to notify the indemnitor to come in and defend as a condition precedent to recovery."). However, Eleventh Circuit case law clearly establishes that when the indemnitor is not provided such an opportunity, further requirements are placed upon the indemnitee when attempting to recover in an indemnity suit.

omitted). "[W]hen the indemnitee has not given the indemnitor an opportunity to review, pass upon, or participate in the settlement, due process and 'equitable indemnity principles' compel a demonstration of actual as opposed to potential liability." *Id.* (citation omitted); *see Coquina Invs.*, 760 F.3d at 1316. Actual liability is established "by offering against the defendant in the second suit practically the same evidence as was relied on to establish the case against him, the plaintiff, when he was defending the first suit." *GAB Bus. Servs., Inc.*, 809 F.2d at 761 (emphasis omitted) (quoting *Hull & Co. v. McGetrick*, 414 So. 2d 243, 245 (Fla. 3d DCA 1982)); *see Gulf Grp. Holdings, Inc. v. Coast Asset Mgmt. Corp.*, 516 F. Supp. 2d 1253, 1262–63 (S.D. Fla. 2007) (citation modified) ("Under Florida law, n indemnitor, to become bound by a settlement agreement in a suit against the indemnitee, must have (1) notice of the claim, and (2) an opportunity to appear and defend the claim. If the indemnitor is not given notice or an opportunity to defend, then the indemnitee must prove actual liability[.]").

In the instant motion, Plaintiff fails to directly address Python's opportunity to participate in the relevant settlements, *see* Dkt. 165 at 3–8, and there is insufficient evidence on the record to establish to what extent Python was provided "an opportunity to review, pass upon, or participate in the settlement[s]." *See* Dkts. 70-

---

*See GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 760 (11th Cir. 1987); *Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1316 (11th Cir. 2014).

8, 70-9, 70-10, 70-11, 70-12, 70-22 (detailing communications between Plaintiff and Python about the various TCPA claims, but not providing any details as to the settlements specifically). This lack of evidence produces a genuine issue as to whether Plaintiff has the burden of establishing either potential or actual liability. Drawing factual inferences in favor of Python as the non-moving party, the Court must then presume that Python was excluded from the settlement process and that Plaintiff has the burden of establishing *actual* liability under the indemnification clause.

The indemnification clause of the March 2021 Agreement specified that Python would hold Final Expense harmless "[from] and against any and all claims, costs, actions, losses, expenses, liabilities, and damages ('Claims') arising from . . . [Python's] failure to ensure that the Leads provided to [Final Expense] comply with the terms of the TCPA." Dkt. 70-1 at 3. The Court interprets the broad language of this indemnification clause to include the reimbursement of settlement costs arising from Python's TCPA violations. *See id.*; *see also Snyder's-Lance Inc. v. Cowen Truck Line, Inc.*, 572 F. App'x 824, 827 (11th Cir. 2014) (citation modified) ("A standard contract of indemnity will be construed to cover all losses, damages, and liabilities which reasonably appear to have been within the contemplation of the parties."); *Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.*, 853 So. 2d 1072, 1077 (Fla. 5th DCA 2003) ("In cases involving contractual indemnity, the terms of

the agreement will determine whether the indemnitor is obligated to reimburse the indemnitee for a particular claim."). Thus, to establish actual liability for settlement costs under the indemnification clause, Plaintiff must provide evidence establishing the TCPA claims brought against it. *See GAB Bus. Servs., Inc.*, 809 F.2d at 760.

Here, Plaintiff fails to directly reference any specific provisions of the TCPA, and further does not address the merits of the TCPA claims that led to relevant settlements. *See* Dkt. 165 at 5–7. However, Plaintiff mentions the DNC Registry—which would appear to invoke 47 U.S.C. § 227(c)(3) and 47 C.F.R. § 64.1200(c)(2)—and thus the Court will utilize these provisions for its analysis.[7] Under these provisions, the TCPA prohibits "any person from making or transmitting a telephone solicitation to the telephone number of any subscriber" included on the DNC Registry. 47 U.S.C. § 227(c)(3); 47 C.F.R. § 64.1200(c)(2) (implementing regulation of § 227(c), which holds that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."). A violation of the DNC Registry also creates a private right of action

---

[7] The Court notes that "there is no burden upon the district court to distill every potential argument that could be made based on the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments[.]" *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (citing *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)).

for any person "who has received more than one [violative] telephone call within any 12-month period by or on behalf of the same entity." 47 U.S.C. § 227(c)(5).

In this context, the Court analyses three relevant settlements arising from alleged TCPA violations. First, Wes Newman notified Plaintiff of a TCPA claim, Dkt. 165-6 ¶ 16; Dkt. 165-7 at 358–60, which was settled for $1,500. Dkt. 165-6 ¶ 16; Dkt. 165-7 at 97–100, 307–08. The Court finds that there are no genuine issues as to Mr. Newman's valid TCPA claim, as he testified that he received two unsolicited calls within one month from Python on Plaintiff's behalf while he was on the DNC Registry. Dkt. 165-7 at 358–60. Thus, the evidence on the record establishes Python's actual liability for TCPA violations under the indemnification clause as to Mr. Newman's settlement.

Next, Robert Doane notified Plaintiff of a TCPA claim, Dkt. 165-6 ¶ 17; Dkt. 165-7 at 20–41, which was settled for $18,500. Dkt. 165-6 ¶ 17; Dkt. 165-7 at 89–96, 301–03. The Court finds that there are genuine issues as to the validity of Mr. Doane's TCPA claim, as there is no evidence on the record showing that he received calls from Python. *See* Dkt. 165-7 at 20–41; *see also* Dkt. 165-3 at 377–84. Thus, the current evidence on the record is insufficient to establish Python's actual liability

for TCPA violations under the indemnification clause as to Mr. Newman's settlement.[8]

Finally, TCPA attorney Andrew Heidarpour notified Plaintiff that two of his clients, Joe Ferguson and Thomas Matthews, had TCPA claims and intended to file a class action lawsuit against Final Expense. Dkt. 165-6 ¶¶ 18–19; Dkt. 165-7 at 315–16. This was settled for $100,000. Dkt. 165-6 ¶ 19; Dkt. 165-7 at 47–54, 304–06. The Court finds genuine issues as to the validity of Mr. Ferguson's and Mr. Matthews's TCPA claim, as the record contains no evidence that they received calls from Python. *See* Dkt. 165-7 at 315–16, 317–24. Thus, the evidence on the record is insufficient to establish Python's actual liability for TCPA violations under the indemnification clause as to the settlements of Mr. Ferguson and Mr. Matthews. *But see* footnote 7, *supra*.

Because there are no genuine issues of material fact as to Python's liability for Mr. Newman's TCPA claim settlement, Python breached the indemnification clause of the March 2021 Agreement when it failed to reimburse Plaintiff for the settlement costs. *See* Dkt. 165-6 ¶¶ 16–19 (detailing Python's failure to indemnify Plaintiff).

   *c. Damages*

---

[8] There is a pending motion by Plaintiff for sanctions due to alleged discovery failures. *See* Dkts. 168, 205. If late-produced discovery impacts the record, Plaintiff may refile this issue.

The damages arising from the aforementioned breach include, at a minimum, the settlement amount. The Court finds that there are no genuine issues as to any material fact regarding the existence of these damages and their direct causal connection to the breach of the indemnification clause.

Therefore, the Court determines that Python is liable for breach of contract regarding the March 2021 Agreement's indemnification clause, and thus grants-in-part Plaintiff's Motion for Summary Judgment as to Count I—regarding the settlement of Mr. Newman's TCPA claim. The Court denies in part Plaintiff's Motion for Summary Judgment as to Count I—regarding the settlements of Mr. Duane, Mr. Ferguson, and Mr. Matthews' TCPA claims.

Per Rule 56(g), the determination of damages is reserved pending supplemental briefing, which the Court will order upon the resolution of the remaining claims. Fed. R. Civ. P. 56(g). Furthermore, any damages must be proven reasonable per Florida law; the Court reserves this analysis for a later time. *See Gulf Grp. Holdings, Inc.*, 516 F. Supp. 2d at 1263 (citing *Atlantic Coast Dev. Corp. v. Napoleon Steel Contractors, Inc.*, 385 So. 2d 676, 680–81 (Fla. 3d DCA 1980)) ("If the indemnitor is not given notice or an opportunity to defend, then the indemnitee must prove actual liability and that the settlement was reasonable to bind the indemnitor to the settlement agreement."); *Coquina Invs.*, 760 F.3d at 1316 (citing *GAB Bus. Servs., Inc.*, 809 F.2d at 761) ("[T]he plaintiff 'could only recover so much

of the settlement as it proved was reasonable in amount . . . and a consequence of [the defendant's misconduct].'").

## II.    Count II: Breach of Contract Against Ms. Levin

Plaintiff seeks summary judgment as to the breach of contract claim against Ms. Levin, utilizing the same analysis as was used for Count I. *See* Dkt. 165 at 3–8. The March 2021 Agreement was entered into by Plaintiff and Python—not Ms. Levin in her personal capacity. *See* Dkt. 70-1. Although the Court found that Plaintiff's complaint contained sufficient allegations to include Ms. Levin and Mr. Levin at the motion to dismiss stage, Dkt. 34 at 8–10, Plaintiff provides no argument in its instant motion as to why the corporate veil should now be pierced. *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (citing *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Accordingly, the Court denies Plaintiff's Motion for Summary Judgment as to Count II.

## III.    Count III: Breach of Implied-in-Fact Contract

In the alternative to its express breach of contract claims, Plaintiff seeks summary judgment as to the breach of an implied-in-fact contract claim against Defendants Python and Ms. Levin. Dkt. 165 at 8–11. Because this claim is in the alternative to Counts I and II, the Court will not analyze this claim as to the

settlement of Mr. Newman's TCPA claim, as summary judgment has already been granted as to this aspect of Count I. This leaves the TCPA claims of Mr. Duane, Mr. Ferguson, and Mr. Matthews.

"Florida courts use breach of contract analysis to evaluate claims of breach of contract implied in fact[.]" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012). Here, not only is the same analysis used as was utilized in Count I, *id.*, but Plaintiff alleges that the contents of the implied contract are identical to the contents of the March 2021 Agreement described in Count I. Dkt. 165 at 9. As discussed above, the same genuine issues arise as to the settlements of Mr. Duane, Mr. Ferguson, and Mr. Matthews' TCPA claims. Therefore, the Court denies Plaintiff's Motion for Summary Judgment as to Count III.

### IV.    Count IV: Promissory Estoppel

In the alternative to both its express and implied in fact breach of contract claims, Plaintiff seeks summary judgment as to the claim of promissory estoppel against Defendants Python and Ms. Levin. Dkt. 165 at 11–14.

"The doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice." *Doe v. Univision Television Group, Inc.*, 717 So. 2d 63, 65 (Fla. 3d DCA 1998). "In other words, promissory estoppel is unavailable when a written contract comprises the disputed promise." *Figueroa v. Wise US Inc.*, No. 8:25-CV-02726-SDM-AEP, 2025

WL 3080130, at *2 (M.D. Fla. Nov. 4, 2025) (citing *Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*, 830 So. 2d 924 (Fla. 4th DCA 2002)). Here, Plaintiff argues that the promise made was functionally identical to the contents of the March 2021 Agreement. *Compare* Dkt. 165 at 12 (explaining that the promise made was "to indemnify Final Expense and hold it harmless from TCPA and DNC claims arising from Python's failure to comply with the TCPA"), *with* Dkt. 70-1 (providing that Python will hold Final Expense harmless from all claims arising from Python's failure to comply with the TCPA). Thus, because the Court has found that the March 2021 Agreement is binding, promissory estoppel is unavailable for the same disputed promise. Therefore, the Court denies Plaintiff's Motion for Summary Judgment as to Count IV.

### V. Counts VIII, IX, X, and XI: Negligent Supervision, Fraudulent Misrepresentation, Negligent Misrepresentation, and Civil Conspiracy

The Court now considers Counts VIII, IX, X, and XI—the remaining tort claims. Although the Court previously declined to apply the independent tort doctrine to these counts at the motion to dismiss stage, Dkt. 34 at 11–13, the doctrine is relevant in light of Plaintiff's instant motion. *See* Dkt. 72 at 20 (raising the independent tort doctrine as an affirmative defense).

The independent tort doctrine provides that "a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract."

20

*UN2JC AIR 1, LLC v. Whittington*, 324 So. 3d 1, 3 (Fla. 4th DCA 2021) (quoting *Island Travel & Tours, Ltd. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020)). This doctrine "bar[s] a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations." *Freeman v. Sharpe Res. Corp.*, No. 6:12-CV-1584-Orl-22TBS, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (citing *Tiara Condo. Ass'n Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399 (Fla. 2013)). Furthermore, claims are often barred "[w]here damages sought in tort are the same as those for breach of contract." *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 494 (Fla. 3d DCA 1994).

Regarding the negligent supervision claim (Count VIII), Plaintiff contends that Python breached a duty by failing to supervise Defendant Raza, which resulted in calls to individuals on the DNC Registry and ensuing TCPA violations. *See* Dkt. 70 ¶¶ 91–93; Dkt. 165 at 18. The Court has found that Python breached its contractual duty to indemnify Plaintiff for TCPA claims arising from some of those same calls— at least as to Mr. Newman. In this context, the alleged duty underlying the negligent supervision claim is directly related to the contractual duty that was breached. However, even if the Court were to find that Python had a separate, non-contractual duty to supervise Raza, the damages that Plaintiff seeks are identical to those sought under the breach of contract claim—$141,312.50. Dkt. 165 at 7, 20. Therefore, because both claims arise from a duty related to the same TCPA violations and seek

identical damages, the negligent supervision claim is not independent of the breach of contract claim and is thus barred. *Ghodrati v. Miami Paneling Corp.*, 770 So. 2d 181, 183 (Fla. 3d DCA 2000) ("Plaintiff may not recover damages for [a tort claim] that duplicate damages awarded for breach of contract. . . . The damages requested by the plaintiff under her tort theories are identical to those requested in her claim for breach of contract.").

Regarding the fraudulent misrepresentation claim (Count IX)—and the negligent misrepresentation claim in the alternative (Count X)—Plaintiff argues that Python breached a duty through Defendant Raza's pre-contract statement that Python had the capacity to fund litigation defending against TCPA claims, *see* Dkt. 70 ¶¶ 95, 98; Dkt. 165 at 14–17, 24–25, which was admittedly false. Dkt. 165-7 at 333. The Court has already found that Plaintiff's damages arise from Python's failure to perform its contractual obligation to indemnify Plaintiff for TCPA claims. Under these circumstances, the alleged duty underlying the claim of misrepresentation is closely intertwined with the contractual duty that was breached—both relate to Python's ability to indemnify Plaintiff. *Sun Life Assurance Co. of Can. v. Imperial Premium Fin.*, LLC, 904 F.3d 1197, 1223 (11th Cir. 2018) (quoting *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1316 (11th Cir. 2007)) (finding that under Florida's independent tort doctrine, "[m]isrepresentations relating to the breaching party's performance of a contract do not give rise to any

22

independent cause of action in tort, [where] such misrepresentations are interwoven
and indistinct from the heart of the contractual agreement.").

However, even if the Court were to find that Python had a separate, pre-
contractual duty to accurately represent its ability to indemnify—notwithstanding
the issue of Defendant Raza's authority to make representations on behalf of
Python—Plaintiff does not distinguish between the damages sought, and requests
damages identical to those sought under the breach of contract claim—$141,312.50.
Dkt. 165 at 7, 17, 25. Therefore, because both claims arise from the same alleged
TCPA-related losses and seek identical damages, the claim of misrepresentation is
not independent of the breach-of-contract claim and is thus barred. *See Peebles v.
Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017) (citation modified) ("It is . . . well
settled that, for an alleged misrepresentation regarding a contract to be actionable,
the damages stemming from that misrepresentation must be independent, separate[,]
and distinct from the damages sustained from the contract's breach.").

Regarding the civil conspiracy claim (Count XI), Plaintiff maintains that the
Python Defendants conspired to defraud Plaintiff by agreeing to misrepresent that
Python had the capacity to fund defense litigation. *See* Dkt. 70 ¶¶ 102–03; Dkt. 165
at 21–23. As the Court found in its analysis of the misrepresentation claim under
Counts IX and X, the duty underlying the civil conspiracy claim is intertwined with
the contractual indemnification provisions of the March 2021 Agreement. Plaintiff

furthermore seeks damages identical to those sought under the breach of contract claim—$141,312.50. Dkt. 165 at 7, 23. Therefore, the civil conspiracy claim is likewise not independent of the breach of contract claim and is thus barred. *See Valley Nat'l Bank v. CaptiveOne Servs., LLC*, No. 9:24-CV-81491, 2025 WL 1124432, at *5 (S.D. Fla. Apr. 16, 2025) (finding that a claim of civil conspiracy was barred by the independent tort doctrine because the plaintiff failed to establish "separate and distinct damages from the alleged breach of contract damages"); *Uniq Branch Off. Mexico, S.A. de C.V. v. Steel Media Grp., LLC*, No. 22-23876-CIV, 2023 WL 6294841, at *8 (S.D. Fla. Sept. 27, 2023) (holding that a claim of civil conspiracy was precluded because the plaintiff failed to establish "separate damages [from the breach of contract claim] for the civil conspiracy claim to stand").

Accordingly, the Court denies Plaintiff's Motion for Summary Judgment as to Counts VIII, IX, X, and XI.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Plaintiff Final Expense's Motion for Summary Judgment, Dkt. 165, is **GRANTED-IN-PART** as to Count I, regarding the settlement of Wes Newman's TCPA claim, and is **DENIED-IN-PART** as to Count I, regarding the settlements of Robert Duane, Joe Ferguson, and Thomas Matthews' TCPA claims.

2. Plaintiff Final Expense's Motion for Summary Judgment, Dkt. 165, is

**DENIED-IN-PART** as to Counts II, III, VI, VIII, IX, X, and XI.

**DONE AND ORDERED** at Tampa, Florida, on January 9, 2026.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record