**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**FINAL EXPENSE DIRECT**,

Plaintiff,

v. Case No. 8:23-cv-2093-WFJ-AAS

**PYTHON LEADS, LLC**, and **JACQUELYN LEAH LEVIN**, and **DAVID LEVIN**,

Defendants.
_____________________________________/

**ORDER**

Before the Court is Plaintiff Final Expense Direct's ("Final Expense") Motion to Recover Attorneys' Fees and Costs and for Damages. Dkt. 248; *see* Dkt. 258. Defendants Python Leads, LLC, Jacquelyn Leah Levin, and David Levin ("Defendants") then filed an untimely response in opposition. Dkt. 260. The Court held a hearing on the Motion, Dkt. 262, and an evidentiary hearing. Dkt. 272. Following the evidentiary hearing, both parties submitted supplemental briefs. Dkts. 275, 276. After careful consideration, the Court grants-in-part and denies-in-part Plaintiff's Motion.

**BACKGROUND**

This dispute arises from business dealings between Plaintiff Final Expense, a life insurance company, and Python, a lead-generating company. As the Court

previously found, Defendants repeatedly failed to comply with discovery deadlines after multiple warnings by the Court. *See* Dkt. 240 at 8–9. Plaintiff Final Expense then moved for sanctions against Defendants for these discovery violations. Dkt. 168. After holding an evidentiary hearing on the matter, Dkt. 227, the Magistrate Judge entered a report and recommendation, which recommended that the Court enter default judgment against the Defendants as a sanction under Federal Rule of Civil Procedure 37(b). Dkt. 231. This Court adopted the Report and Recommendation and directed the Clerk to enter default judgment in Plaintiff Final Expense's favor against: Python Leads, LLC as to Count I (breach of contract); Jacquelyn Leah Levin as to Count II (breach of contract); Python Leads, LLC, Jacquelyn Leah Levin, and David Levin as to Count VI (Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")); David Levin as to Count VII (fraud in the inducement); David Levin as to Count IX (fraudulent misrepresentation); and David Levin as to Count XI (civil conspiracy). Dkt. 240. Within this Order, the Court also found that Plaintiff Final Expense was entitled to an award of reasonable attorneys' fees incurred because of the Motion for Sanctions. *Id.* at 14. Default judgment was then entered in Plaintiff's favor and against Defendants. Dkt. 242.

Following entry of default judgment, Defendants filed a motion to set aside default judgment. Dkt. 245. On April 16, 2026, Plaintiff Final Expense then filed the present Motion to Recover Attorneys' Fees and Costs and for Damages. Dkt. 248.

On April 17, 2026, instead of responding in opposition to this Motion, Defendants filed an amended motion to set aside default judgment, replacing their prior Motion and seeking reconsideration of the Court's order adopting the Report and Recommendation. Dkt. 249. On June 5, 2026, the Court denied Defendants' Amended Motion and declined to reconsider its ruling. Dkt. 254. The Court then provided Defendants an additional fourteen days to respond to Plaintiff Final Expense's present Motion. *Id.*

Eighteen days later, on June 23, 2026, Plaintiff Final Expense filed an unprompted reply, highlighting Defendants' failure to timely respond. Dkt. 258. Plaintiff Final Expense alleged that its attorneys attempted to meet and confer regarding potential disputes as to attorneys' fees and costs, per Local Rule 7.01(c). Dkt. 257. Specifically, Plaintiff Final Expense reports that its attorneys repeatedly and unsuccessfully followed up with Defendants' counsel to arrange a meeting. Dkts. 257-1, 257-2, 257-3. Although a meeting was eventually scheduled, Dkts. 257-4, 257-5, Defendants' counsel allegedly failed to attend. Dkts. 257-6, 257-7, 257-8.

On June 26, 2026, Defendants then filed their untimely response in opposition to Plaintiff Final Expense's present Motion. Dkt. 260. Defendants argued in part that the Court should first rule on the Amended Motion to Set Aside Default Judgment, *id.* at 2; however, the Court had already done so. Dkt. 254 (denying Defendants' Amended Motion to Set Aside Default Judgment). On July 7, 2026, the Court held

a hearing on the present Motion, Dkt. 262, which was followed by an in-person evidentiary hearing[1] held on August 28, 2026. Dkt. 272. The Court granted the parties leave to file supplemental briefs following the evidentiary hearing, which they did. Dkts. 275, 276.

## DISCUSSION

In light of Plaintiff Final Expense's entitlement to reasonable attorneys' fees and the default judgment, the Court awards Plaintiff Final Expense some of its requested attorneys' fees, costs, and damages, as outlined below.

### I. Attorneys' Fees – Rule 37(b) Sanction

Rule 37(b) provides that—in addition to entering default judgment—a court may order a party who has failed to obey a discovery order to "pay the reasonable expenses, including attorney's fees, caused by the failure[.]" Fed. R. Civ. P. 37(b)(2)(C). Consistent with this provision, the Court has already found that "Plaintiff Final Expense Direct is entitled to an award of reasonable attorney's fees incurred because of this Motion for Sanctions, with the amount to be determined by separate briefing[.]" Dkt. 240 at 14.

Plaintiff Final Expense has provided an affidavit that has detailed allegedly relevant attorneys' fees paid by Final Expense to the law firm Neel, Hooper & Banes,

[1] The Court notes that it found the testimony of Ellen Jo Wilhelm—the Chief Financial Officer for Plaintiff Final Expense—to be entirely credible and likewise found credible Plaintiff's affidavits. If these were contradicted by other testimony, the contradictions of others are found not credible.

P.C., totaling $171,600. *See* Dkt. 248-1. Additionally, Plaintiff Final Expense has provided supplemental invoices representing further attorneys' fees. Dkt. 273-21 (failing to designate what attorneys' fees are pertinent to this Motion for Sanctions). This amount is based on "various discovery responses, multiple meet-and-confers, three (3) motions to compel, and two (2) motions for sanctions." Dkt. 248 at 3–4 (citing Dkt. 248-1).

However, the Court—utilizing 30 years of litigating experience in this market—finds that the contemptuous and obstreperous conduct at issue would not have taken a skilled lawyer more than 120 hours of work at a rate of $500 per hour to resolve. *See Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("Courts are often faced with . . . claims for hours or fee rates which seem excessive. . . . For decades the law in this circuit has been that: 'The court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees[.]'" (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir.1940))). Such recalcitrance requires senior counsel to handle, rather than an associate or paralegal. Much of the amount claimed for these sanctions damages is repetitive of work that would have been done anyway in this action, and not found to be "incurred because of *this* Motion for Sanctions[.]" Dkt. 240 at 14 (emphasis added).

After a thorough review of the affidavit, Dkt. 248-1, along with the supplemental invoices, Dkt. 273-21, the Court finds that its assessed figure of $60,000 (120 hours at $500) is proper. It is noted that Defendants have not suggested an alternative amount or specified particular activities that ought not be included. *See* Dkt. 260 at 4 (merely arguing that the fee award "must be limited to reasonable expenses actually caused by the specific discovery violation"). Therefore, Plaintiff Final Expense is entitled under Rule 37(b) to $60,000 of attorneys' fees that were incurred because of the relevant Motion for Sanctions.

## II. Damages

Plaintiff Final Expense requests the following damages: $106 for the total cost of the leads at issue; $120,000 in settlement amounts paid to resolve the impending Telephone Consumer Protection Act ("TCPA") claims; $22,250 in attorneys' fees incurred in negotiating the relevant TCPA settlements; and punitive damages equal to twice the total damages attributable to Defendant David Levin. *See* Dkt. 248.

Generally, damages for a default judgment may only be awarded if "the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1985) (citation modified). To that end, Rule 55(b)(2) provides that following entry of a default judgment, a district court may conduct an evidentiary hearing to "determine the amount of

damages[.]" Fed. R. Civ. P. 55(b)(2). After a thorough review of the record and the benefit of an evidentiary hearing, Dkt. 272, the Court finds that Plaintiff Final Expense is entitled to some—but not all—of its requested damages.

*a. Counts I, II, VII, IX, & XI – Breach of Contract, Fraud in the Inducement, Fraudulent Misrepresentation, & Civil Conspiracy*

The Court has found Defendants Python Leads, LLC and Jacquelyn Leah Levin liable for breach of contract (Counts I & II), Dkt. 240 at 5, and Defendant David Levin liable for fraud in the inducement, fraudulent misrepresentation, and civil conspiracy (Counts VII, IX, & XI). *Id.* at 6. Under Florida law, damages for breach of contract are "aimed at restoring the injured party to the position the party would have occupied had the breach not occurred[,]" *Simmons v. USI Ins. Servs., Ltd. Liab. Co.*, 721 F. Supp. 3d 1333, 1341 (M.D. Fla. 2024) (citing *Lindon v. Dalton Hotel Corp.*, 49 So. 3d 299, 305 (Fla. 5th DCA 2010)), and damages in tort are similarly "aimed at 'restor[ing] the injured party to the position it would have been in had the wrong not been committed.'" *Id.* (quoting *Totale, Inc. v. Smith*, 877 So. 2d 813, 815 (Fla. 4th DCA 2004)).

Plaintiff Final Expense has provided evidence that it paid a total of $106 for relevant leads provided by Python Leads, LLC. *See* Dkt. 248-2 at 2. Specifically, Plaintiff Final Expense paid $25 for the lead associated with Wes Newman and $27 for each of the three additional leads at issue, for a total of $106. *See id.* Plaintiff Final Expense argues that "by providing leads that were not compliant with

applicable legal requirements and were generated through unlawful or improper means . . . , the leads were rendered entirely unusable and devoid of value for their intended purpose." Dkt. 248 at 11.

The Court finds that Plaintiff Final Expense has sufficiently established damages in the amount of $106, representing the amounts paid for the leads at issue. The Court determines that this amount is necessary to restore Plaintiff Final Expense to the position it would have occupied had the breach and wrong not occurred. Accordingly, Plaintiff Final Expense is entitled to recover $106 in damages for its breach of contract claims against Defendants Python Leads, LLC and Jacquelyn Leah Levin (Counts I & II) and for its fraud in the inducement, fraudulent misrepresentation, and civil conspiracy claims against David Levin (Counts VII, IX, & XI).

Additionally, Plaintiff Final Expense has provided evidence that it paid a total of $120,000 to resolve impending TCPA claims arising from calls made by Python Leads, LLC. *See* Dkt. 248-2 at 24–51. Specifically, Final Expense paid: (1) $100,000.00 to settle the claims of Thomas Matthews and Joe Ferguson; (2) $18,500.00 to settle the claim of Robert Doane; and (3) $1,500.00 to settle the claim of Wes Newman. *See id.* Plaintiff Final Expense asserts that these settlement payments were the result of "Defendants' deceptive representations and unconscionable actions, including their failure to honor their promises to provide

insurance for and cover such third party TCPA claims that resulted from their auto-dialed lead calls to consumers, as alleged in the Second Amended Complaint and deemed admitted by virtue of the default." Dkt. 248 at 8.

The Court finds that Plaintiff Final Expense has sufficiently established damages in the amount of $120,000, representing the settlement payments made as to Thomas Matthews and Joe Ferguson, Robert Doane, and Wes Newman. Based upon the credible testimony presented by Plaintiff, the Court determines that these payments were reasonable and appropriate, especially in light of the considerable delay and inaction of Defendants. This amount is found to be necessary to restore Plaintiff Final Expense to the position it would have occupied had the breach and wrong not occurred. Concerning the breach of contract, the binding contract expressly calls for indemnification of such claims by Ms. Levin and Python. Dkt. 70-1 at 3. This contractual duty was breached entirely, hence these contract damages. Accordingly, Plaintiff Final Expense is entitled to recover $120,000 in damages for its breach of contract claims against Defendants Python Leads, LLC and Jacquelyn Leah Levin (Counts I & II) and for its fraud in the inducement, fraudulent misrepresentation, and civil conspiracy claims against David Levin (Counts VII, IX, & XI).

Further, Plaintiff Final Expense has provided evidence that it paid a total of $22,250 to the law firm Allen, Mitchell & Allen for their work in negotiating the

TCPA settlements at issue. *See* Dkt. 248-2 at 3 (citing Dkt. 248-2 at 54–72). Plaintiff Final Expense argues that these attorneys' fees and costs were "paid to defend against the TCPA actions and negotiate settlements in those actions to avoid class actions qualify as damages." Dkt. 248 at 11.

The Court finds that Plaintiff Final Expense has sufficiently established damages in the amount of $22,250, representing the amounts paid to negotiate the relevant TCPA settlements. The Court determines that this amount is necessary to restore Plaintiff Final Expense to the position it would have been in had the breach and wrong not occurred. *See* Dkt. 70-1 at 3 ("hold [Final Expense] harmless from and against any and all claims, costs, actions, losses, expenses, liabilities, and damages"). Accordingly, Plaintiff Final Expense is entitled to recover $22,250 in damages for its breach of contract claims against Defendants Python Leads, LLC and Jacquelyn Leah Levin (Counts I & II) and for its fraud in the inducement, fraudulent misrepresentation, and civil conspiracy claims against David Levin (Counts VII, IX, & XI).

*b. Count VI – FDUTPA*

The Court has additionally found Defendants Python Leads, LLC, Jacquelyn Leah Levin, and David Levin liable for violating FDUTPA (Count VI). Dkt. 240 at 4–5. Under Florida law, "a person who has suffered a loss as a result of [a FDUTPA violation] may recover actual damages, plus attorney's fees and court costs." Fla.

Stat. § 501.211(2). FDUTPA limits recovery to either: (1) the value between what was promised and what was delivered; or (2) the total price paid for a valueless good or service. *See Dem. Rep. Congo v. Air Cap. Grp.*, LLC, 614 F. App'x 460, 472 (11th Cir. 2015) (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)).

Regarding Plaintiff Final Expense's payment of $106 for relevant leads provided by Python Leads, LLC, *see* Dkt. 248-2 at 2, the Court finds that Plaintiff Final Expense has sufficiently established these as actual damages as the total price paid for the valueless leads. Accordingly, Plaintiff Final Expense is entitled to recover $106 in damages for its FDUTPA claim against Defendants Python Leads, LLC, Jacquelyn Leah Levin, and David Levin (Count VI).[2]

As to Plaintiff Final Expense's settlement payments of $120,000 to resolve impending TCPA claims arising from calls made by Python Leads, LLC, *see* Dkt. 248-2 at 24–51, Defendants contend that the "claimed TCPA settlement payments are not the difference between the value of leads promised and the value of leads received. They are consequential, third-party litigation-related losses allegedly flowing from later disputes." Dkt. 260. The Court disagrees, as the contract did not merely provide for leads—the parties contracted for *both* the leads *and* for

[2] Plaintiff Final Expense is additionally entitled to recover $106 in damages against Defendants under its FDUTPA claim, which represents a separate and distinct basis for recovery but does not result in double recovery.

indemnity. *See* Dkt. 70-1 at 3 ("and [Python Leads, LLC] will hold [Final Expense] harmless from and against any and all claims, costs, actions, losses, expenses, liabilities, and damages ('Claims') arising from [Python Leads, LLC]'s . . . failure to ensure that the Leads provided to your company comply with the terms of the TCPA."). Specifically, a representative of Python Leads, LLC falsely promised indemnity up to $1,000,000. *See* Dkt. 165-3 at 363 ("We have Unlimited Defense through berkshire hathaway for litigation issues! and we have up[ ]to 1 million $$ defense!"). The Court finds Plaintiff Final Expense's settlement payments of $120,000 to be actual damages—as this is the value between the indemnification that was promised and the lack of indemnification that was delivered. *See Good Air, Inc. v. Litecrete, Inc.*, 403 So. 3d 241, 244 (Fla. 4th DCA 2025) (recognizing actual damages under FDUTPA where the plaintiff paid for contractual performance that was not provided and incurred additional expenses as a result). And the allegations of the operative FDUTPA claim—which are admitted via the default judgment—are that these are "direct" damages. Dkt. 70 at 36, 37. Accordingly, Plaintiff Final Expense is entitled to recover $120,000 in damages for its FDUTPA claim against Defendants Python Leads, LLC, Jacquelyn Leah Levin, and David Levin (Count VI).[3]

[3] Plaintiff Final Expense is additionally entitled to recover $120,000 in damages against Defendants under its FDUTPA claim, which represents a separate and distinct basis for recovery but does not result in double recovery.

Regarding Plaintiff Final Expense's payment of $22,250 to the law firm Allen, Mitchell & Allen for their work in negotiating the TCPA settlements at issue, *see* Dkt. 248-2 at 3 (citing Dkt. 248-2 at 54–72), the Court finds—similar to the $120,000 in settlement payments—that Plaintiff Final Expense has sufficiently established these as actual damages as the value between the indemnification that was promised and the lack of indemnification that was delivered. *See Good Air, Inc.*, 403 So. 3d at 244. Accordingly, Plaintiff Final Expense is entitled to recover $22,250 in damages for its FDUTPA claim against Defendants Python Leads, LLC, Jacquelyn Leah Levin, and David Levin (Count VI).[4]

Under FDUTPA, Plaintiff Final Expense additionally seeks an award of the entirety of the amount paid to the law firm Neel, Hooper & Banes, P.C. in its representation, minus any attorneys' fees awarded pursuant to Rule 37. Dkt. 248 at 15–20 (claiming $579,265.94). The FDUTPA attorneys' fees provision provides that, "[i]n any civil litigation resulting from an act or practice involving a [FDUTPA] violation . . . the prevailing party, after judgment in the trial court *and exhaustion of all appeals*, if any, may receive . . . reasonable attorney's fees and costs from the nonprevailing party." Fla. Stat. § 501.2105(1) (emphasis added). In other words, the statute "contemplate[s] that the motion [for attorneys' fees and costs] be filed after

[4] Plaintiff Final Expense is additionally entitled to recover $22,250 in damages against Defendants under its FDUTPA claim, which represents a separate and distinct basis for recovery but does not result in double recovery.

the expiration of the appeal period." *Am. Registry, LLC v. Hanaw*, No. 2:13-cv-352-FtM-29CM, 2015 WL 5687693, at * 4 (M.D. Fla. Sept. 25, 2015); *see M.G.B. Homes v. Ameron Homes*, 30 F.3d 113, 115 (11th Cir. 1994).

Because the time to appeal has not yet expired in the present action, FDUTPA's fee provision is not yet triggered. Accordingly, the Court denies without prejudice Plaintiff Final Expense's motion for attorneys' fees and costs under FDUTPA as premature, and grants Plaintiff Final Expense leave to refile the same after either the expiration of the time to appeal or the conclusion of an appeal.

c. *Punitive Damages*

Plaintiff Final Expense lastly seeks punitive damages against Defendant David Levin regarding the FDUTPA, fraud in the inducement, fraudulent misrepresentation, and civil conspiracy claims (Counts VI, VII, IX, & XI). Dkt. 248 at 13–15. Punitive damages are available for such claims, even when they arise from the same facts underlying related breach of contract claims. *See HGI Assocs. v. Wetmore Printing Co.*, 427 F.3d 867, 876 (11th Cir. 2005) ("[W]e conclude that punitive damages are awardable for sufficient fraudulent inducement claims, even when those claims involve facts related to a collateral breach of contract claim.").

Under Florida law, a defendant "may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds the defendant was personally guilty of intentional misconduct or gross negligence." Fla. Stat. §

768.72(2); *see id.* § 768.72(2)(a) (defining "intentional misconduct" as the defendant having "actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursu[ing] that course of conduct, resulting in injury or damage"); *id.* § 768.72(2)(b) (defining "gross negligence" as the defendant's conduct being "so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct"). "Under Florida law, the purpose of punitive damages is not to further compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future." *Myers v. Central Fla. Inv., Inc.*, 592 F.3d 1201, 1216 (11th Cir. 2010).

Defendants contend that Plaintiff Final Expense "seeks punitive damages against David Levin individually while relying on generalized allegations about Python Leads and the litigation conduct of multiple parties and lawyers." Dkt. 260 at 5. After reviewing the allegations of Plaintiff Final Expense's Second Amended Complaint, Dkt. 70 ¶¶ 81–88, 94–95, 104–09—which are admitted via the default judgment—and the evidence and testimony presented at the evidentiary hearing, Dkts. 272, 273, 274, the Court finds that the "clear and convincing" standard is not met on this record to establish that Defendant David Levin was "personally guilty of intentional misconduct or gross negligence." Fla. Stat. § 768.72(2); *see, e.g.*, Dkt. 70

¶ 95 ("Defendants provided a false statement of material fact to Final Expense that it had access to up to $1 million dollars of litigation defense regarding litigation issues. . . . Defendants knew this representation was false because evidence shows that Mr. Levin admitted to a TCPA attorney pursuing a claim against Final Expense that Defendants did not have the capital to hire counsel."). Accordingly, the Court finds that punitive damages would not be proper as to Defendant David Levin.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

1. Plaintiff Final Expense Direct's Motion to Recover Attorneys' Fees and Costs and for Damages, Dkt. 248, is **GRANTED-IN-PART** and **DENIED-IN-PART**.

   a. Plaintiff Final Expense Direct is awarded attorneys' fees pursuant to Federal Rule of Civil Procedure 37(b) in the amount of **$60,000**, for which Defendants Python Leads, LLC, Jacquelyn Leah Levin, and David Levin are liable.

   b. Plaintiff Final Expense Direct is awarded damages against Defendants Python Leads, LLC, Jacquelyn Leah Levin, and David Levin in the amount of **$142,356**, as follows:

      i. **$106** for the total cost of the leads at issue, under the claims of breach of contract (Counts I & II) as to Python

Leads, LLC and Jacquelyn Leah Levin; fraud in the inducement, fraudulent misrepresentation, and civil conspiracy (Counts VII, IX, & XI) as to David Levin; and FDUTPA (Count VI) as to all Defendants;

ii. **$120,000** in settlement amounts paid to resolve the impending TCPA claims, under the claims of breach of contract (Counts I & II) as to Python Leads, LLC and Jacquelyn Leah Levin; fraud in the inducement, fraudulent misrepresentation, and civil conspiracy (Counts VII, IX, & XI) as to David Levin; and FDUTPA (Count VI) as to all Defendants; and

iii. **$22,250** in attorneys' fees incurred in negotiating the relevant TCPA settlements, under the claims of breach of contract (Counts I & II) as to Python Leads, LLC and Jacquelyn Leah Levin; fraud in the inducement, fraudulent misrepresentation, and civil conspiracy (Counts VII, IX, & XI) as to David Levin; and FDUTPA (Count VI) as to all Defendants.

c. As to attorneys' fees and costs under FDUTPA, Plaintiff Final Expense Direct's Motion is **DENIED WITHOUT PREJUDICE** as premature

and may be renewed, if fees there be, after the expiration of the time to appeal or the conclusion of any appeal.

d. As to punitive damages against Defendant David Levin, Plaintiff Final Expense Direct's Motion is **DENIED**.

2. The Clerk is **DIRECTED** to enter final judgment in favor of Plaintiff Final Expense Direct and against Defendants Python Leads, LLC, Jacquelyn Leah Levin, and David Levin consistent with this Order: **$202,356.00** against each Defendant jointly and severally; to bear post-judgment interest; for which let execution issue.

3. The Clerk is directed to close this case and terminate all pending deadlines and matters therein.

**DONE AND ORDERED** at Tampa, Florida, on September 16, 2026.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record